WENTWORTH MILITARY ACADEMY *v.* MARSHALL.

5-777 283 S. W. 2d 868

Opinion delivered November 21, 1955.

*Jameson & Jameson,* for appellant.

*J. E. Simpson,* for appellee.

PAUL WARD, Associate Justice.  Appellees, Mr. and Mrs. B. O. Marshall, enrolled their son, Edwin, in the Wentworth Military Academy about the first of September, 1953, agreeing to pay the Academy. the total sum of $1,770.50 for a full school term of approximately nine months.  Edwin attended the Academy until the Christmas vacation period and voluntarily failed to return.  At that time appellees owed the Academy a balance of approximately $875.50 based on the charges for a full term.

The Academy filed suit against appellees for the said balance due and after a hearing the trial court directed a verdict for the Academy, appellant, in the sum of $884.24, being the balance due plus interest.  On appellees' motion the trial court then set the verdict aside and granted a new trial, from which order appellant prosecutes this appeal.

We have reached the conclusion that the trial court was right in the first instance and that it was error to set aside the first judgment and grant a new trial.

On September 1, 1953 Mrs. Marshall signed an application for the admission of her son to the Academy in which it was stated that said application was ''subject to provisions and regulations published in your current catalogue.''  A copy of the catalogue referred to had previously been mailed to appellees and a copy is made a part of the record.  On page 61 of said catalogue under the heading of Refunds and Reductions there appears the following paragraph:

"Students are admitted to the Academy only on condition that they remain the entire year, unless suspended, dismissed, forced to withdraw on account of sickness or graduated from Junior College. In case of suspension, dismissal, or voluntary withdrawal, no money paid on tuition or other fees will be refunded and any unpaid balance shall become immediately due and payable. The terms set forth in this catalogue constitute the Academy contract and entrance in the Academy constitutes acceptance of this contract for the full year."

On September 7, 1953, at the time Edwin entered the Academy his father signed an Agreement with the Academy showing in detail the expenses of his son "at the Academy for the entire school year from Sept. 7, 1953, to May 31, 1954." This Agreement shows the total expenses for the school term to be $1,770.50. It further shows receipt of payment as of that date in the sum of $370.50 with $175 due October 1, 1953 and the same amount due on the first of each month thereafter up to and including May 1, 1954.

It is not disputed that Edwin quit the Academy voluntarily the latter part of December 1953 and did not return or offer to do so. He did however finish out the school term at Berryville.

Under the above factual situation appellees were obligated to pay the full amount for one full term of school.

The trial court, in setting aside the first judgment, gave as his reason the fact that the contract on which "plaintiff's cause of action was based is unenforcible because of lack of mutuality." In reply to this appellant takes the position that the contractual relationship existing between appellant and appellees was what is termed a unilateral contract, citing 12 Am. Jur., page 512, § 14, where it is stated that: "The doctrine of mutuality is inapplicable to unilateral contracts." We, however, do not think this contention on the part of appellant is a complete answer to the reason given by the trial court for its action. It is true of course that

appellant has signed no paper or agreement obligating it to keep Edwin Marshall in school for the full term and provide him while there with board and free tuition, but the fact remains that when they accepted Edwin as a student they thereby became obligated to fulfill all the provisions set forth in the catalogue and they were thereafter bound just as they would have been had they signed a written contract.

We surmise that the trial judge felt there was no "mutuality" because he was under the impression that the Academy was not obligated to keep Edwin in school for the full term and that it could discharge him at its own volition and without cause. We do not think this is a fair interpretation of the contractual obligation imposed on the Academy by the terms of the contract. At page 48 of said catalogue under the heading "Regulations" there is this paragraph:

"The Academy reserves the right to demand the withdrawal of any student without the making of specific charges. If a boy's presence is felt to be unwholesome, or if he has a degrading influence on those around him, or has been guilty of conduct unbecoming a gentleman, he will be asked to leave."

In our opinion the above quoted paragraph imposes on the Academy the obligation to keep a student for the entire school year and that it would have no right "to demand the withdrawal" of such student except for one of the reasons therein stated. We can understand the wisdom of the Academy not being obligated to prefer "specific charges." To have to do so would compel the Academy unnecessarily to embarrass the student or his parents.

Although the exact issue presented here has never been directly passed on by our court, it has been considered by many text writers and by other courts. In Williston on Contracts, § 1352 the rule applicable here is stated this way:

"In several cases the right of a school to recover the full annual tuition charge when the pupil was expelled for proper cause, or left without reason before the close of the year has been allowed. The only justification for this can be the fact, if it is a fact, that one less pupil involves no saving of expense to the school."

In American Law Reports, Annotated Volume 69 at page 712 we find this statement:

"Although a few cases assert different views, it has been held generally that, where a contract for schooling is for a specified period, for which a definite payment is to be made, even where it covers board as well as tuition, and there is no general stipulation for a deduction or refund in the event of inability to attend (and particularly if the contract provides that no deduction will be made for absence) the entire contract price becomes payable, regardless of nonattendance by the pupil or student for part or all of the time. . . ."

In the case of *Hall* v. *Mt. Ida School for Girls, Inc.,* 258 Mass. 464, 155 N. E. 418, 50 A. L. R. 1495, appellant paid a full year's tuition for her granddaughter to attend appellee school. The granddaughter married within two or three months after the school term began and was expelled, and appellant sued. The trial court permitted recovery, but the Supreme Court reversed that judgment. It was stated in the opinion that it was agreed "that contracts for board, lodging and instruction at a private school for a specified time have always been held to be entire contracts and not divisible."

In *Peirce* v. *Peacock Military College,* (Tex.) 220 S. W. 191, where the same issue as here was presented the court in holding that the school was entitled to recover for a full term, among other things, said:

"We find that contracts made with schools for board, lodging, and tuition, which contain provisions clearly showing that the contract is for an entire session and that no deduction is to be made if the student leaves

before the expiration of the session, have been held to authorize a recovery of the price stipulated to be paid for the entire session.''

Somewhat the same reasoning used and the same conclusion reached in the above cited cases will be found in *William* v. *Stein, et al.,* 166 N. Y. S., 836 and *Hitchcock Military Academy* v. *Myers,* 76 Cal. App. 473, 245 Pac. 219.

The case of *M. F. Teeter* v. *Horner Military School,* 165 N. C. 564, 81 S. E. 767 [annotated in 51 L. R. A. at page 975, et seq.] holds that the school could collect the full amount designated for a full term of school where the student was expelled and where the catalogue contained rules for discipline similar to the ones in the case under consideration. In that case the catalogue provided that ''applicants are accepted with the express understanding that they will submit to our authority in every respect. A boy whose conduct is hurtful to the scholarship and morals of his associates will be expelled.''

This court held in the case of *Kentucky Military Institute* v. *Cohen,* 131 Ark. 121, 198 S. W. 874, that the school could not recover the full amount where the student was expelled without good reason. Of course this question need not be considered here because Edwin was not expelled but voluntarily quit school.

Appellees for an affirmance rely on *Holton* v. *Cook,* 181 Ark. 806, 27 S. W. 2d 1017, 69 A. L. R. 709, but that case is easily distinguishable on the facts from the case under consideration. There the student became physically unable because of defective eyesight to continue in the school until the end of the term. This fact was recognized by the court and made the basis of the conclusion there reached. The court there distinguished its holding from the *Hall* case and the *Peirce* case above cited.

Since there is no dispute about the amount involved here and since it is not denied that Edwin left the school voluntarily, it is our conclusion that the contractual relationship created by the instruments above mentioned

imposed the liability on appellees to pay the balance due for a full term. Therefore the cause is reversed with directions to the trial court to enter judgment in accordance with this opinion.

Justice MILLWEE dissents.