103 N.J. Super. 476 (1968)
247 A.2d 688
MAURICE S. FAYMAN AND FLORENCE FAYMAN, HIS WIFE, PLAINTIFFS,
v.
TRUSTEES OF BURLINGTON COLLEGE, A NON-PROFIT CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, AND ELSIE F. SLATER, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 16, 1968.
*477 Mr. Richard D. Ehrlich for plaintiffs.
Mr. Martin L. Haines for defendants (Messrs. Dimon, Haines & Bunting, attorneys).
WICK, J.S.C.
Plaintiffs Maurice S. Fayman and Florence Fayman instituted this suit to compel the trustees of Burlington College and Elsie F. Slater, the principal of St. Mary's Hall, to issue the school transcript of grades of a former student, Samuella Fayman, the daughter of plaintiffs. Defendants filed a counterclaim for damages of $425 based on an alleged breach of a reenrollment contract entered into by the parties. Upon the payment of $425 into court plaintiffs secured the transcript. The parties now seek a determination of liability on the reenrollment contract and of the right of a private school to withhold a student's transcript record. The material facts are set forth below.
Prior to 1967 Samuella Fayman attended St. Mary's Hall, a non-profit, private school operated by defendant trustees, for approximately six years. In the Spring of 1967 her father Maurice Fayman submitted a signed reenrollment contract to have his daughter readmitted the following Fall. At the same time he made a $50 deposit which was "required to reserve a place in the school." This was done notwithstanding a desire on the part of Samuella not to reenroll. It was not until September 1967 that Mr. Fayman notified the school that he was withdrawing his daughter from St. Mary's and requested a release from his enrollment contract. The trustees refused to cancel the contract for the reason that a place had been saved for Samuella until the opening of school and that it was now too late to secure a satisfactory *478 replacement for her. (The school policy does, however, allow for withdrawals prior to July 1).
As a result of Fayman's failure to pay the tuition demanded, the trustees refused to issue an official transcript of Samuella's grades until payment was received.
The first issue involves the liability for tuition resulting from Fayman's alleged breach of the enrollment agreement. The court finds that there was a valid and enforceable contract between Maurice S. Fayman and defendant trustees whereby St. Mary's Hall was to reenroll Samuella as a student, to reserve a place for her and to furnish her with schooling for the year 1967-68; plaintiff Fayman in turn paid the $50 enrollment fee and bound himself to pay tuition of $900 for the year. The court also finds that he breached this agreement. There was insufficient evidence presented to prove any oral modification of that agreement. Furthermore, the court does not find any justifiable ground upon which Fayman may avoid his obligation. This is particularly true where neither Mr. nor Mrs. Fayman made any definite statement with regard to Samuella's withdrawal until September 1967. For these reasons the court holds Fayman liable to pay Samuella's tuition; however, since defendant has complied with its legal duty to mitigate damages by obtaining a replacement for Samuella in the second semester, the damages of $425 are for the first semester only. Tabor Academy v. Schwartz, 129 N.J.L. 390 (E. & A. 1943); Bergman v. Bouligny, 82 A.2d 760 (D.C. Mun. App. 1951).
The parties also seek a determination as to the right of a private school to withhold issuance of a student's transcript covering school performance for past years in a case where a parent has breached an enrollment contract for a subsequent year. It is plaintiffs' contention that the fulfillment of all obligations under the past enrollment contracts entitles them to a transcript for those years. For several reasons the court feels this argument is without merit.
*479 Firstly, in the absence of a demonstration of unreasonable or arbitrary action on the part of the private school or trustees, this court is not in a position to compel issuance of the transcript. 47 Am Jur., Schools, §§ 221, 229; 34 Am. Jur., Mandamus, § 206. See also Strank v. Mercy Hospital of Johnstown, 376 Pa. 305, 102 A.2d 170 (Sup. Ct. 1954); 383 Pa. 54, 117 A.2d 697 (Sup. Ct. 1955). Moreover, in this case the party seeking equitable relief has breached the contract and thus by equitable standards comes into court with "unclean hands." Secondly, the court should look to the contract in order to determine the rights and obligations of the private school in relation to the parents of the student. The contract here under consideration contains no express provision regarding transcripts. Even assuming the school was under an implied obligation to make the transcript of grades available to the parents upon request, the court would find that performance of this obligation is conditional upon the parents' fulfillment of all past and present obligations under the contract. Therefore, once the new agreement (for 1967-68) became binding upon Fayman, the school's right to withhold the transcript in the event of a breach of contract became fixed. Fayman's refusal to pay the tuition due constituted a breach. At that point it was immaterial that the transcript concerned prior years for which payment had been received. Fayman, by virtue of his execution of the new contract, was a party to an obligation which was continuing in nature. The court also notes that the withholding of the transcript is the only means short of litigation by which the school can enforce the obligations due.
In accordance with the foregoing opinion, the trustees of Burlington College should be awarded a judgment for $425.